Michael J. JANKOWSKI, and all others similarly situated, Plaintiffs-Appellants-Petitioners,

v.

MILWAUKEE COUNTY, and municipal corporation, Defendant-Respondent.

Supreme Court

*No. 79–1896. Argued September 9, 1981.—Decided November 3, 1981.*

(Also reported in 312 N.W.2d 45.)

For the petitioners there was a brief (in this court) and oral argument by *Ruth Irvings* of Milwaukee, counsel for Legal Action of Wisconsin, Inc.

For the respondent the cause was argued by *Robert G. Ott,* principal assistant corporation counsel, with whom on the brief (in court of appeals) was *Gerard S. Paradowski,* acting corporation counsel.

WILLIAM G. CALLOW, J.   This is a review of a decision of the court of appeals which affirmed an order granting summary judgment entered by the circuit court for Milwaukee county, Judge Laurence C. Gram, Jr., in favor of the defendant Milwaukee county.

The named plaintiff, Michael J. Jankowski, brought this declaratory judgment action on behalf of himself and all other persons who were involuntarily detained and committed in Milwaukee county, pursuant to Chapter 51, Stats. 1973, between January 1, 1975, and September 1, 1976. The plaintiffs seek a declaration that no money is due and owing the county for the costs incurred during these commitments in Milwaukee county institutions.

In a related case, Judge John E. McCormick of the Milwaukee County Circuit Court, in his memorandum decision of August 18, 1976, Case No. 441–417, in State ex rel. Memmel v. Mundy, declared that all of the commitments were invalid due to violations of plaintiffs' Fourteenth Amendment rights to due process of law and Sixth Amendment rights to effective assistance of counsel and right to trial by jury. The circuit court ordered that the plaintiffs be released or that new proceedings be instituted where appropriate. The court further ordered all records of the commitments be expunged. We note that the merit of the decision in State ex rel. Memmel v. Mundy was not appealed and that the parties to this action do not dispute the fact that plaintiffs' commitments were invalid. We, therefore, have no occasion to address

the propriety of plaintiffs' commitments. We do, however, note that the trial judge, with some justification, used vigorous language in his evaluation of the issue of due process.

Sometime after the circuit court declared the commitment procedures unconstitutional and released the plaintiffs, Milwaukee county commenced collection efforts against the class members, seeking recovery of the costs of care and services at the Mental Health Center pursuant to sec. 46.10, Stats.[1] Milwaukee county sought payment from the named plaintiff, Michael J. Jankowski, in the amount of $6,314.95. Mr. Jankowski refused payment and commenced this declaratory judgment action. The circuit court, although acknowledging that plaintiffs may have some cause of action against those persons responsible for or participating in the proceedings resulting in their commitments, determined that Milwaukee county was not a party to those proceedings. The circuit court concluded that Milwaukee county merely provided care for plaintiffs pursuant to a court order and, therefore, was entitled to be paid. Accordingly, the circuit court granted the county's motion for summary judgment. The court of appeals affirmed the judgment of the trial court in a per curiam opinion, holding that Milwaukee county was not an active participant in the illegal detentions and

[1] Sec. 46.10(2), Stats., reads: "[A]ny person, including but not limited to a person admitted or committed . . . shall be liable for the cost of the care, maintenance, services and supplies in accordance with the fee schedule established by the department under s. 46.03(18)."

The dissent infers that the phrase "any person, including but not limited to a person admitted or committed" applies to some group other than those individuals admitted or committed. The dissent does not identify any such group, and we know of none.

While counsel for Milwaukee county acknowledged that a sizable number of the class involved in this action is judgment proof and, therefore, unable to pay for the cost of care the county seeks, counsel states the county feels a duty to the taxpaying public to institute collection efforts and proceedings.

commitments, and hence it should not bear the costs of care. That court further found that sec. 46.10 needed no interpretation in imposing liability upon *any* person committed to a county mental institution.[2] We conclude the court of appeals failed to place proper emphasis upon the denial of due process involved in this case, and we reverse the judgment.

We find no precedent dealing with this question in Wisconsin or elsewhere. We are called upon to determine whether an individual illegally and involuntarily committed may be held responsible for the costs of care pursuant to sec. 46.10, Stats. We have recently addressed the issue of the constitutionality of sec. 46.10 and found no difficulty upholding the statute. *In Matter of Guardianship of Nelson,* 98 Wis. 2d 261, 296 N.W.2d 736 (1980) ; *In Matter of Guardianship of Klisurich,* 98 Wis. 2d 274, 296 N.W.2d 742 (1980). Plaintiff does not challenge the facial constitutionality of sec. 46.10; he merely challenges its application to all persons illegally detained and committed in Milwaukee county between the time periods of January 1, 1975, and September 1, 1976.

In arguing his case before this court and the court of appeals, plaintiff has advanced three principal bases upon which he contends relief can and should be grant-

---

[2] The court of appeals drew the following conclusion: "We see no reason to excuse the appellant from liability under sec. 46.10, Stats., for valuable services rendered to him by Milwaukee County, *merely because of the defective procedures* by which he was placed at the Mental Health Center. There is no theory under the facts before us which would entitle the appellant to relief from his obligations to the county under sec. 46.10, Stats. According to principles of equity and restitution, the reverse of the appellant's arguments should obtain: the appellant has received a benefit from Milwaukee County which in justice should be paid. For this reason, it is not a case of enriching the county at the expense of the appellant." (Emphasis added.) *Jankowski v. Milwaukee County,* 99 Wis. 2d 803, 300 N.W.2d 82 (Ct. App. Table 1980).

ed: (1) Sec. 46.10, Stats., should not be construed to assess costs of care and services against individuals illegally committed; (2) any imposition of liability would result in a further denial of due process; and (3) such an assessment of costs against an illegally committed individual is violative of public policy and inequitable. Because we find, utilizing sound principles of statutory construction, that sec. 46.10 applies only to due process commitments, we need not address the additional issues as to whether other constitutional or equitable principles prohibit statutory liability.

We note at the outset that sec. 46.10, Stats., provides the *exclusive* remedy for liability and imposition of costs of care provided by a state institution.[3] Thus, any unjust enrichment argument advanced by the county or accepted by the lower courts[4] regarding a "benefit"—if, in fact, there was one[5] in terms of the treatment received by the illegally committed individuals is not a ground for recovery.

Sec. 46.10, Stats., provides that any person committed or admitted to a state institution shall be liable for the

---

[3] Sec. 46.10, Stats., provides: "Cost of care and maintenance, liability; collection and deportation counsel; collections; court actions; recovery. (1) Liability and the collection and enforcement of such liability for the care, maintenance, services and supplies specified in this section is governed exclusively by this section." See, *State Department of Public Welfare v. Sem,* 8 Wis. 2d 46, 49, 98 N.W.2d 428 (1959).

[4] See Note 2, *supra.*

[5] Plaintiff makes this cogent argument in his petition for review before this court: "Of what value is a bed on a locked ward to a person illegally deprived of access to his/her own home? To a person who is not mentally ill, of what possible benefit is treatment such as psychotropic medication? And of what use is occupational therapy to one whose illegal commitment has prevented him/her from going to work? To presume that the services were of value to plaintiffs ignores the grossly defective procedures by which they were committed and the importance of the due process protections for fair and correct judicial determinations."

cost of care, maintenance, services, and supplies according to his ability to pay. Milwaukee county advances a facially simplistic reading of the statute: any person committed, regardless of the validity of the commitment, is liable for the costs of care. The county notes that this court has previously found that sec. 46.10 "is valid, unambiguous, and no confusion or inequity arises from its operation." *State Department of Public Welfare v. Sem,* 8 Wis. 2d 46, 49, 98 N.W.2d 428 (1959) (holding that liability imposed upon a parent pursuant to sec. 46.10 could not be eliminated by a divorce decree). Milwaukee county notes that where a statute is unambiguous, interpretation is unnecessary. *Harris v. Kelley,* 70 Wis. 2d 242, 249, 234 N.W.2d 628 (1975); *Weather-Tite Co. v. Lepper,* 25 Wis. 2d 70, 74, 130 N.W.2d 198 (1964).

Plaintiff urges that sec. 46.10, Stats., can be read in one of two ways. Either the statute clearly and unambiguously excludes persons whose commitments are later declared judicially invalid because those persons are not committed in the eyes of the law; or, if it does require interpretation using basic canons of statutory construction, it should be construed to exclude persons whose commitments were declared invalid.

Plaintiff argues that, due to fundamentally flawed fact-finding procedures, there was never any due process finding that the individuals were in need of treatment or commitment. We agree and conclude that, because the proceedings were not adequate to sustain a finding that the individuals were in need of care and treatment, regardless of the fact that they may have been in need of such care and treatment, there was no valid commitment order. Thus the plaintiffs cannot be considered "committed" for any purpose, and they do not fall under the literal reading of sec. 46.10, Stats.

Plaintiff also argues that a statute cannot be construed so as to work an absurd or unreasonable result even

when that statute appears clear and unambiguous on its face. *Teamsters Union Local 695 v. Waukesha County,* 57 Wis. 2d 62, 69, 203 N.W.2d 707 (1973) ; *Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965) ; *Worachek v. Stephenson Town School District,* 270 Wis. 116, 124, 70 N.W.2d 657 (1955) ; *Pfingsten v. Pfingsten,* 164 Wis. 308, 313, 159 N.W. 921 (1916). Plaintiff asserts that to construe sec. 46.10 (2), Stats., to mean that persons committed whether legally or illegally are liable for the cost of their care is not only absurd, inequitable, and against public policy, but it is inconsistent with the language and implication of prior decisions of this court.

In this latter respect, plaintiff cites a number of cases concerning liability under sec. 46.10, Stats., noting that they involve legal commitments. In *State Department of Public Welfare v. Sem, supra,* the court ruled that a father was liable for the cost of the care of his committed minor child, but noted that the child had been duly committed. In *Estate of Buxton,* 246 Wis. 97, 98, 16 N.W.2d 399 (1944), the court, in holding an individual's estate liable under sec. 46.10 for the cost of confinement, noted that the individual had been legally committed. Plaintiff argues, by negative implication *(expressio unius est exclusio alterius),* that had the commitments in question been illegal the court's ruling concerning liability for the cost of confinement would have been different. *See: County of Columbia v. Bylewski,* 94 Wis. 2d 153, 169, 288 N.W.2d 129 (1980) ; *Teamsters Union Local 695 v. Waukesha County,* 57 Wis. 2d at 67. In *In Matter of Guardianship of Nelson,* 98 Wis. 2d at 269, a case involving a constitutional challenge to sec. 46.10 by a person found not guilty by reason of mental disease or defect and committed pursuant to sec. 971.17 (1), Stats., this court noted that individuals committed are "generally" liable for their treatment expenses. Plaintiff takes this to imply that the court may have envisaged situations where per-

sons are not. *See also: Treglown v. H & SS Department,* 38 Wis. 2d 317, 156 N.W.2d 363 (1968) (a person committed to a mental health facility after a finding of not guilty by reason of mental disease or defect was found not liable for the cost of his subsequent confinement and care).

Although we have not previously faced the specific issue as to whether sec. 46.10, Stats., applies solely to legal or due process commitments, we have noted in our earlier opinions construing liability that the commitments were valid. While we do not have any legislative history to guide us, we do not believe that the legislature intended that individuals illegally committed should, nevertheless, be held liable for the costs of their care. *See: County of Columbia v. Bylewski,* 94 Wis. 2d at 164 (" '[t]he purpose of statutory construction is to ascertain the intent of the legislature' "). We concur with plaintiff that such a result would be absurd. "If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The court must restrain the words." *Holy Trinity Church v. United States,* 143 U.S. 457, 460 (1892).

Milwaukee county seeks to counter this argument by stating the proposition that, where a statute is plain on its face, intentions cannot be imputed to the legislature. *See: Honeywell, Inc. v. Aetna Casualty & Surety Co.,* 52 Wis. 2d 425, 429, 190 N.W.2d 499 (1971) ; *Cartwright v. Sharpe,* 40 Wis. 2d 494, 505, 162 N.W.2d 5 (1968) ; *Estate of Matzke,* 250 Wis. 204, 208, 26 N.W.2d 659 (1947). The county places particular reliance on *Mellen Lumber Co. v. Industrial Commission,* 154 Wis. 114, 142 N.W. 187 (1913) (construing a provision of the Worker's Compensation Act).

"It is argued that a literal interpretation of a statute should not be followed where such interpretation would lead to an absurd consequence. The statute in question may be inequitable, but this does not make it absurd. It was at one time urged that the courts might mitigate the

rigor of harsh statutes by adopting a rule of equitable construction by which exceptions might be read into such statutes. It never obtained in this state, nor to any considerable extent in this country." *Id.* at 119.

We would distinguish *Mellen* from the instant case. There the court found that, under a literal reading of the Worker's Compensation Act, an employee who lost two fingers was entitled to the same compensation as an employee who had been so maimed that he was totally incapacitated from performing *any* gainful employment. While this result was clearly inequitable and burdensome to the employer, it was not absurd or violative of any constitutional rights. While we agree that there are cases where an inequitable statute would not be absurd, we are not presently dealing with such a case. Thus we do not find *Mellen* persuasive.

Plaintiff advances a further canon of statutory construction which we also believe is applicable to the case before us. As we have recently stated in *Niagara of Wisconsin Paper Corp. v. Department of Natural Resources*, 84 Wis. 2d 32, 50, 268 N.W.2d 153 (1978), "statutes should be construed so as to avoid constitutional objections." *Accord, State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 239 N.W.2d 313 (1976) ; *Milwaukee v. Milwaukee Amusement, Inc.*, 22 Wis. 2d 240, 125 N.W.2d 625 (1964). Plaintiffs argue that interpreting sec. 46.10, Stats., to include liability for illegal commitments would be in violation of their constitutional rights.[6] Plaintiffs contend

[6] In regard to this argument, we note that at the time plaintiffs filed their complaint sec. 1983 actions were not available as, at that time, municipalities were immunized from suit. Since that time, however, the United States Supreme Court has held that municipalities are not entitled to qualified immunity based on good faith of their officials. *Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398 (1980) ; *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Plaintiffs therefore request that their claim be converted to one for relief under 42 U.S.C. sec. 1983 (1976).

that the illegal commitments deprived them of their liberty. To render them liable for the cost of that care would deprive them of their property.

The Wisconsin Civil Liberties Union, who filed an amicus curiae brief, persuasively argues that if this court allows Milwaukee County to collect from the plaintiffs, then it must hold that sec. 46.10, Stats., creates a class of people liable for commitment costs which includes those illegally and involuntarily committed with those legally committed whether voluntarily or involuntarily. We agree that principles of equal protection forbid such a statutory construction.

While the legislature could have spoken with greater clarity, both principles of common sense and sound statutory construction easily resolve this case. We take both solace and wisdom from the oft-cited words of the United States Supreme Court:

" 'It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. . . . This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration . . . of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. . . . [I]t appears that the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance, and those statutes which comprehend all things in the letter they have expounded to extend to but some things, and those which generally prohibit all people from doing such an act they have interpreted to permit some people to do it, *and those which include every person in the letter, they have adjudged to reach to some persons only,* which expositions have always been founded upon the intent of the legislature, which they have collected sometimes by considering the cause and necessity of making the act, sometimes by comparing one part of the act with another, and sometimes by

foreign circumstances.'" (Emphasis added.) *Holy Trinity Church v. United States*, 143 U.S. at 459.

*Accord, United Steelworkers of America, AFL–CIO–CLC v. Weber*, 443 U.S. 193, 201 (1979) *(quoting Holy Trinity); Muniz v. Hoffman*, 422 U.S. 454, 469 (1975) *(quoting Holy Trinity)*. We hold that sec. 46.10, Stats., applies only to due process commitments, and therefore it does not reach the plaintiffs in question. For we believe, citing *Holy Trinity*, 143 U.S. at 472, "[i]t is the duty of the courts, . . . to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute." We conclude, therefore, that Milwaukee county's motion for summary judgment was improperly granted, and we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed. Rights declared.

COFFEY, J. *(dissenting).* I dissent because I interpret sec. 46.10, Stats., as authorizing the collection of the costs of the plaintiffs' care and maintenance regardless of the validity of their initial commitment. I also disagree with the majority's conclusion that sec. 46.10 is the exclusive remedy for the state or Milwaukee county to enforce their respective rights of reimbursement. I find it no more inequitable that the plaintiffs who received the benefits of the care bear the burden of the costs than the county which rendered the services as ordered by the court. My reasoning is set out more fully below.

The majority opinion sets forth three major points. First, an action under sec. 46.10, Stats., is the exclusive remedy for the state or Milwaukee county to enforce their respective rights of reimbursement provided to those who are financially able to pay. Second, in using

the word "commitment," the legislature did not intend that an action under sec. 46.10 for reimbursement should lie against an individual who had been subjected to an invalid commitment. Third, to extend liability in such a case would be to compound the alleged constitutional error in the initial commitment.

I have already indicated my belief that sec. 46.10, Stats., is not the exclusive remedy available to the state or county. However, regardless of the position one takes on that issue, what is important in this case is what was the legislature's purpose in adopting the statute. The obvious reason for the legislative action was to make those inmates who were committed to state or county institutions who could afford to pay liable for a portion of the cost of their care and treatment. The legislature was concerned with reducing the amount of money that would have to be borne by the taxpayers. It was not concerned with how the patients were admitted, received or committed to the respective institutions or how they came to receive the services for the introductory section of sec. 46.10(2), recites that it applies to *any person,* including but not limited to a person admitted or committed . . . receiving care, maintenance, services and supplies provided in any county institution within the state . . ., wherein the state is chargeable with all or any part of the person's care, maintenance, services and supplies.[1]

---

[1] Sec. 46.10(2), Stats., reads as follows:

"**Cost of care and maintenance, liability; collection and deportation counsel; collections; court actions; recovery. . . .**

"(2) Except as provided in sub. (2m), any person, including but not limited to a person admitted or committed under ss. 51.10, 51.13, 51.15, 51.20, 51.35(3), 51.37(5), 51.45(10), (11), (12) and (13), 55.05, 55.06, 971.14(2) and (5), 971.17(1), 975.01, 1977 stats., 975.02, 1977 stats., 975.06 and 975.17, 1977 stats., receiving care, maintenance, services and supplies provided by any institution in this state including university of Wisconsin hospital and clinics, in which the state is chargeable with all or part of the person's

The quoted language makes it eminently clear that formal admission or commitment proceedings are not required to establish liability for services and maintenance. It is merely the fact that care and services have been rendered in the providing institution that creates the liability, for it is unfair that the taxpayers of Milwaukee county should be called upon to pay for medical benefit given to one who is able to pay for the service and who personally or through his immediate relative, in all probability, initiated the commitment proceeding. The purpose of the statute is clear and unambiguous to prevent unjust enrichment at the taxpayers' expense. Therefore, it makes no difference whether a common law action for unjust enrichment may be brought, as the legislature has created a statutory remedy.

In addition to the preceding discussion as to the nonexclusivity of sec. 46.10, Stats., it can be noted that two interrelated but distinct statutory provisions indicate that the provisions of sec. 46.10 are *not* exclusive. These

care, maintenance, services and supplies, and any person receiving care and services under boards or facilities established under ss. 49.175, 51.42 and 51.437, and the person's property and estate, including the homestead, and the spouse of the person, and the spouse's property and estate, including the homestead, and, in the case of a minor child, the parents of the person, and their property and estates, including their homestead, shall be liable for the cost of the care, maintenance, services and supplies in accordance with the fee schedule established by the department under s. 46.03(18). The department may bring action for the enforcement of the liability. If a spouse, widow or minor, or an incapacitated person may be lawfully dependent upon the property for their support, the court shall release all or such part of the property and estate from the charges that may be necessary to provide for those persons. The department shall make every reasonable effort to notify the relatives liable as soon as possible after the beginning of the maintenance, but the notice or the receipt thereof is not a condition of liability of the relative."

statutory provisions are sec. 51.42(1),[2] and sec. 51.437
(4).[3] Sec. 51.42(1) allows for the establishment of

[2] Sec. 51.42(1)(b) reads as follows:
"Community mental health, mental retardation, alcoholism and drug abuse services. (1) PROGRAM.
". . .
"(b) *Responsibility of county government.* The county boards of supervisors have the primary responsibility for the well-being, treatment and care of the mentally ill, developmentally disabled, alcoholic and other drug dependent citizens residing within their respective counties and for ensuring that those individuals in need of such emergency services found within their respective counties receive immediate emergency services. County liability for care and services purchased through or provided by a board established under this section shall be based upon the client's county of residence except for emergency services for which liability shall be placed with the county in which the individual is found. For the purpose of establishing county liability, 'emergency' services includes those services provided under the authority of s. 51.15, 51.45(11)(b) and (12), 55.05(4), 55.06(11)(a) or 51.45 (11)(a) for not more than 72 hours. Nothing in this paragraph prevents recovery of liability under s. 46.10 or any other statute creating liability upon the individual receiving a service or any other designated responsible party."

[3] Sec. 51.437(4) reads as follows:
"Developmental disabilities services. . . .
"(4) RESPONSIBILITY OF COUNTY GOVERNMENT. The county boards of supervisors have the primary governmental responsibility for the well-being of those developmentally disabled citizens residing within their respective counties and the families of the mentally retarded insofar as the usual resultant family stresses bear on the well-being of the developmentally disabled citizen. County liability for care and services purchased through or provided by a board established under this section shall be based upon the client's county of residence except for emergency services for which liability shall be placed with the county in which the individual is found. For the purpose of establishing county liability, 'emergency' services means those services provided under the authority of s. 51.15, 55.05(4) or 55.06(11)(a). Nothing in this paragraph prevents recovery of liability under s. 46.10 or any other statute creating liability upon the individual receiving a service or any other designated responsible party. Adjacent counties, lacking the financial resources and professional personnel needed to provide

county mental health facilities such as the Milwaukee county facilities to which the petitioners in this case were committed. Sub. (1) of 51.42 sets out the county's responsibility to render such services and uses the following language in referring to the county's liability to collect for the mental health services it renders:

"Nothing in this paragraph prevents recovery of liability under s. 46.10 or any other statute creating liability upon the individual receiving a service or any other designated responsible party."

The exact same language can be found in sec. 51.437 (4), Stats., which sets out the county's responsibility to provide services to disabled persons.[4]

The language of each of these statutory provisions clearly demonstrates that the legislature did not design sec. 46.10, Stats., to provide the exclusive means for the county to recover for the services it renders to persons financially able to pay.

The majority interprets the statutory language as authorizing collection from a person who was committed to an institution only if the commitment was procedurally valid. Assuming the plaintiffs were committed by constitutionally deficient procedures, the majority holds that they were not "committed" as that term is used in the statute and, therefore, they are not liable for the costs of care rendered them.

This construction ignores the use of the phrase *"including but not limited to"* in the statute. That language clearly indicates that the provision was intended to impose liability on all persons who receive care, maintenance, services, and supplies at an institution. Even accepting the majority's finding that the plaintiffs were

---

or secure such services on a single-county basis, may and shall be encouraged to combine their energies and financial resources to provide these joint services and facilities with the approval of the department. This responsibility includes: . . ."

[4] *See* fn. 3.

not "committed," the express language of the statute imposes liability on them as they received the care and services described. The majority reads into the statute language which is not contained therein when they conclude that the statute only authorizes collection from persons committed through constitutionally valid procedures. This may explain why the majority opinion never sets out the entire text of the statute.[5] The liability created by sec. 46.10, Stats., is not limited to persons statutorily admitted or committed. I cannot join the majority opinion which impliedly holds otherwise.

The overemphasis placed on the word "commitment" by the majority, the Wisconsin Civil Liberties Union and Legal Action of Wisconsin, in representing the plaintiff and his family, is unwarranted for another reason. The state is not chargeable for any part of the care and treatment provided to the plaintiff so the introductory clause of sec. 46.10, Stats., containing the examples for admission and commitment, does not create any liability upon the plaintiff. His posture in the liability scheme falls under the next clause that extends liability to "any person receiving care and services under boards or facilities established under secs. 47.195, 51.42 and 51.437.

---

[5] Since the preparation of this dissent, the majority has altered its opinion to include all the relevant language from sec. 46.10, Stats. (*See* majority opinion fn. 1.)

The majority in its footnote 1, questions whether there exists any group of persons in an institution other than those admitted or committed. We believe our point in this discussion as referred to in this dissent is very clear, that the use of the phrase "including but not limited to persons admitted or committed" indicates a legislative intent to allow recovery under sec. 46.10, Stats., no matter how a person comes to receive services at the institution. Responding more directly to the question posed in the majority's footnote, however, we point out that, in addition to being admitted or committed to the institution, persons can be transferred within the same hospital or transferred from other hospitals on the compound for temporary detention without a formal commitment or admission order.

The Milwaukee county institutions are administered by a board established under sec. 46.21. Sec. 51.42 incorporates sec. 46.21 in its provisions. Therefore, the plaintiff is subject to statutory liability if he received care and services in a facility operated under a sec. 51.42 board. The question remains whether the care and services were necessary, for if they were not, it would not only be inequitable, but a denial of due process, to exact a payment from the plaintiff for care and treatment he did not request or need.

In the majority of cases, the necessity for care and treatment is determined by a formal mental commitment proceeding or a voluntary admission to an institution. On the other hand, if a person has been involuntarily committed because of an invalid commitment hearing, that determination is not binding upon him. This means that he may raise the invalidity of the commitment proceedings in any action to collect payment under sec. 46.10, Stats., or other applicable statutory authority for care and services provided, pursuant to such illegal commitment. It is then incumbent on the county to establish that the treatment and service provided were necessary, without relying on the commitment proceeding itself. If the county can fulfill this requirement and establish necessity, it may proceed to recover under sec. 46.10, or other applicable statutes. If it fails to establish the same, judgment for the plaintiff shall be rendered.

In fn. 5 of its opinion, the majority finds cogent the argument that a person who is not mentally ill derives no benefit from psychotropic medication. I agree that one who is not mentally in need of hospitalization and treatment should not have to pay. However, it has not been established that the plaintiff was not mentally ill at the time he was admitted to the Milwaukee county institution. Indeed, there is no indication in the record that any of the members of plaintiff's class were not in

need of treatment at the time they were admitted. The real question is whether the county is precluded from showing that the plaintiff was mentally ill, notwithstanding that the plaintiff was represented at his commitment hearing in a way that offended his constitutional right to counsel, in the opinion of one judge. As I have noted above, the effect of the majority's opinion is to bar the county from proving that the plaintiffs were mentally ill and in need of the services they received.

I would not comment on the facts in *State ex rel. Memmel v. Mundy*[6] or on the mental commitment proceedings referred to except for the fact that the majority approves of the trial judge's comments:

"We note that the merit of the decision in State ex rel. Memmel v. Mundy was not appealed and that the parties to this action do not dispute the fact that plaintiffs' commitments were invalid. We, therefore, have no occasion to address the propriety of plaintiffs' commitments. We do, however, note that the trial judge, with some justification, used vigorous language in his evaluation of the issue of due process." Majority Op. at 432–433.

when they have not had the benefit of reading the entire record in that case and the gratuitous comment made in footnote 5 that in no way relates to the facts in the skimpy record before us.

The majority's interpretation of sec. 46.10, Stats., also ignores the use of the word "admitted" in the statute. From the point of view of the administrator of the county institutions, the plaintiffs in this case were "admitted" to the institution upon delivery of the commitment. Thus, from the point of view of the county and the administrator, the statute authorizes the collection of the cost of care and services from the plaintiffs as persons "admitted" to the institution.

---

[6] *State ex rel. Memmel v. Mundy*, 75 Wis. 2d 276, 249 N.W.2d 573 (1977).

The result of the majority's decision is that the county and consequently the taxpayers are saddled with the cost of the care and services rendered to the plaintiffs. This is done in spite of the fact that the county was required to admit the plaintiffs to the institutions under the applicable provisions of the statutes. (*See:* chs. 46 and 51, Stats., generally.) Under established case law, the county had no standing to question the civil commitment policies and procedures involved. *Dane County v. Dept. of Health & Social Services,* 79 Wis. 2d 323, 330, 255 N.W. 2d 539 (1977). Nor could the county's agents be faulted for failing to inquire into the validity of the orders of commitment where they were "fair on their face." *Kalb v. Luce,* 234 Wis. 509, 516, 291 N.W. 841 (1940) ; *Langen v. Borkowski,* 188 Wis. 277, 299–300, 206 N.W. 181 (1925) ; *Kenney v. Fox,* 232 F.2d 288, 290 (6th Cir. 1955), *cert. den. sub nom. Kenney v. Killian,* 352 U.S. 855 (1956) ; *Arensman v. Brown,* 430 F.2d 190, 194–95 (7th Cir. 1970). Thus, the county is being made to bear the cost of services it was both required to render and could not challenge.

Practically speaking, it would be impossible for the administrator of the county institutions to look behind each and every commitment of the court. Holding the county responsible for accepting patients committed by constitutionally invalid procedures in effect punishes them for innocently providing services pursuant to a court order which they had neither the authority nor time to question.

The plaintiffs point to the allegedly improper proceedings of the Milwaukee county courts which committed the plaintiffs in support of their arguments that the county should be prevented from enforcing the statutory liability. The plaintiffs seek to attribute the actions of the courts to the county. Such an argument is contrary to the principle of separation of powers which is so funda-

mental to our form of democracy. The judicial branch of our government is independent of and co-equal with the other branches of government. Wis. Constitution, art. VII, sec. 2; *In re Cannon*, 206 Wis. 374, 240 N.W. 441 (1932). Imposing responsibility on the county for acts of the courts disregards established principles of judicial immunity. *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962). Indeed, if a judge were not regarded as independent of the county in which he presides, he could not sit in any case in which the county was a party. Likewise, this court would not be able to handle cases in which the state was a party if the judicial branch were not independent.

The remedies of the plaintiffs, if any, are against the judges who presided over their commitment proceedings through a sec. 1983 action, not against the county which was an innocent party to the commitment. It is unlikely that the plaintiffs would succeed in a sec. 1983 action, however, in that principles of judicial immunity protect judges or court commissioners, acting under the authority of the respective probate judges, from liability under 42 U.S.C. sec 1983, when they act within their judicial function. *Abdella v. Catlin*, 79 Wis. 2d 270, 298, 255 N.W.2d 516 (1977). In the case before us, there has been no allegation that the committing judges or court commissioners, acting under the authority of the respective probate judges, acted either in bad faith or outside their jurisdiction.

Holding the plaintiffs liable for the cost of the care and services does not offend principles of equity, especially when the following factors are considered. Foremost among these is the fact that the plaintiffs did indeed receive the care and services for which recovery is sought. There is no evidence in this record which in any way demonstrates that the plaintiffs did not need the care which was provided. Neither is there any evidence demonstrating that at the time committed any of the plain-

tiffs were *not* a danger to themselves or others and, therefore, should not have been committed. Lastly, there is no evidence indicating the number of plaintiffs released who were not subsequently recommitted by constitutionally sufficient procedures. In the absence of these showings, it does not seem "absurd" to interpret sec. 46.10, Stats., as requiring the plaintiffs to pay for the services rendered. It does not strike me as inequitable to require the plaintiffs to reimburse the county if they are able to pay.

It should be pointed out that the majority of the commitment proceedings involved in this case were in all probability based on applications filed by relatives of the plaintiffs. Under sec. 46.10, Stats., the relatives of the committed person are liable for the cost of care and services if the patient is unable to pay. Thus, the majority's decision to relieve the plaintiffs from liability under sec. 46.10 potentially relieves the plaintiffs' relatives of an obligation to pay for treatment which they initially requested. This result is patently unfair to the county and its taxpayers.

I liken this case to the situation which arises in a hospital emergency room when an unconscious victim of a car accident is brought in for treatment. Although the patient does not request treatment, it is given to him. Subsequently, the hospital can, and does, collect the cost of the services rendered from the injured person. This is done regardless of whether another party is responsible for the injuries.

In our case, the county institutions acted like the hospital. They administered the care which was court ordered and necessary. They should be entitled to recovery for this care although it was rendered because of another's wrongful acts. Just as much as a party injured in a car accident cannot avoid paying a hospital for the care they received because another was responsible for the accident, the plaintiffs here should not be

able to avoid paying for the care they received because other persons allowed them to be committed through unconstitutional proceedings. The plaintiffs should be required to pay the costs and then seek to recover from the persons responsible for the improper commitment. They may be entitled to a recovery from their representative at the commitment proceedings for breach of a fiduciary duty or from the committing authorities for violation of their constitutional rights protected under 42 U.S.C. sec. 1983. Regardless of the status of the plaintiffs' rights against other parties, however, the county should not be required to bear the cost of the services the plaintiffs received.

The basic issue involved in this case is whether the county, and, therefore, indirectly the taxpayers, is entitled to reimbursement for the services rendered the plaintiffs. The result of the majority's determination of this issue is that the taxpayers are being denied their due process rights. The question we are faced with is the constitutionality of the commitments and whether the services rendered by the county were necessary and received by the patients. Until these issues are fully litigated, the taxpayers of Milwaukee county are being denied their due process rights to a judicial proceeding in which the necessity of the treatments rendered to the plaintiffs and their ability to pay can be fully litigated. The majority, in effect, bars the taxpayers from a proceeding in which those issues can be litigated and, hence, denies them due process.

If the court would have committed the plaintiffs to a private treatment center, would that private treatment center be entitled to payment for the services rendered regardless of the validity of the initial commitment or would they also have to suffer the loss for the treatment and services rendered in a commitment, the validity of which they have no knowledge of nor standing to challenge. If that be the case, they then would be wise to

search to find some legal ruse, as the plaintiffs did here, to attempt to challenge each and every commitment made to them, and the mentally ill patient be left in limbo in the interim, lest they (the provider) be left without a remedy and have their due process rights denied, the same as the citizens of Milwaukee county, in trying to collect for a legal debt authorized in law for treatment and services rendered in good faith when need and danger have been properly demonstrated.

Our resolution of the issues presented in this case has been hampered by the fact that the initial action in which the plaintiffs' commitments were declared unconstitutional by one judge is not before the court.[7] Based upon the limited information concerning that action which can be found in the files of this case, I am unable to understand why the county initially stipulated to the unconstitutionality of the procedures by which the plaintiffs were committed. I am also unable to understand why the county failed to appeal the order which implemented that stipulation.[8] The questions concerning the validity of the commitments and the appropriate remedies, if any, have never been decided in these United States on a similar factual situation.

Whether a thirteen-minute proceeding is sufficient to determine that a person brought in while hallucinating and under restraints is in need of treatment or whether an extensive proceeding is required to determine that institutional care is necessary when application for treatment is made by one or more qualified physicians (sec. 51.04 and sec. 51.065, Stats. 1973) are questions which should have been fully litigated. The failure of the county to do so may have been a disservice to the residents and taxpayers of the county.

[7] *See:* Citation at fn. 6.

[8] The only appeal arising from that action challenged an order of the court which concerned the provision of representation in future commitments. *State ex rel. Memmel v. Mundy,* 75 Wis. 2d 276, 249 N.W.2d 573 (1977).

I believe it is most imperative that we fully protect an individual's broad spectrum of constitutional rights before authorizing a commitment to a mental hospital, yet I think it borders on the extreme for a court to tacitly mandate that extensive proceedings be held for each and every commitment, particularly where the individual who is the subject of the proceeding is so out of contact with reality, mentally deranged, confused, irrational, often combative and in restraints that frequently it may be unnecessary and unfair that he or she be required to sit through a full trial which neither he nor she comprehends. Not to mention that the requirement of extensive psychiatric testimony rather than the use of affidavits allowed by the statute in each and every commitment proceeding placed a significant burden on the taxpayers and can be a waste of the psychiatrist's time, lest we forget the acute shortage of nursing personnel in hospitals, the time of social workers and other parties involved. Large amounts of costly and valuable court time may be absorbed unnecessarily by such procedures. Extensive proceedings may not be constitutionally necessary where a person's mental condition and demeanor clearly demonstrate that he is deranged and/or severely confused and observation, affidavits or testimony support his conclusion as well as providing adequate support for a finding that the person is a danger to himself or others.

I believe that the majority engages in judicial activism when it reads an exclusion of persons committed by constitutionally insufficient procedures into the liability for cost of services provided for by sec. 46.10, Stats., and other statutes.

I would hold that the stipulated invalidity of the plaintiff's commitment did not furnish a complete defense to an action by the county, pursuant to sec. 46.10, Stats. The county should not be deprived of its day in court. Although it cannot rely on the commitment to establish the need for the care and treatment provided, it can rely

on other evidence including, but not limited to, its medical records, psychiatric testimony, relatives' testimony, affidavits, etc., while the plaintiff was receiving benefits through hospitalization. I would affirm the court of appeals.