IN the MATTER OF the GUARDIANSHIP OF ETHELYN I.C., Incompetent:

ETHELYN I.C., Appellant,

v.

WAUKESHA COUNTY, Respondent.

Court of Appeals

*No. 97–2236. Submitted on briefs June 4, 1998.—Decided July 22, 1998.*

(Also reported in 584 N.W.2d 211.)

On behalf of the appellant, the cause was submitted on the briefs of *Lynne A. Layber* of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Fritz Mielke*, assistant corporation counsel.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J.   Ethelyn I.C. was the subject of an emergency detention petition. Six days after she was detained at Waukesha Memorial Hospital, a court commissioner determined that the County had "failed to meet its burden of Probable Cause" and had failed to prove that Ethelyn was "incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others." A few days later, the County instituted guardianship proceedings, which were ultimately resolved through a stipulation. Ethelyn has continually contested her responsibility for the costs connected with the two petitions. After a hearing on the matter, the trial court issued an order finding that the emergency detention was "appropriate" and that Ethelyn is responsible for all fees and costs associated with both petitions.[1]

Ethelyn's appellate issues all relate to a dispute over liability for the costs associated with the emergency detention and the subsequent guardianship petition. Ethelyn claims that: (1) the sheriff's deputy did not "personally observe" any of the factors offered in support of the emergency detention; (2) the emer-

---

[1] The costs assessed to Ethelyn include: (1) medical and hospital fees associated with the emergency detention totaling $7464.05; (2) the fees of the guardian ad litem for services rendered throughout both proceedings; (3) the fees of Ethelyn's advocate counsel; (4) the fees of the court-appointed expert; and (5) the fees of Ethelyn's temporary guardian appointed during the pendency of the proceedings.

gency detention was not appropriate because there was no basis for a belief that she would suffer irreparable injury or death if not immediately detained; (3) because her detention was unnecessary, the County is responsible for the emergency costs incurred as a result; (4) the trial court erred when it held her responsible for all costs arising from the subsequent guardianship petition; and (5) equitable principles compel a holding that the County is responsible for the costs incurred by the unnecessary petitions.[2]

The initial issue is whether the County's emergency detention of Ethelyn was appropriate. We conclude that it was not and reverse that portion of the order. Based on this determination and by applying relevant statutes and case law, we conclude that the County bears the costs of the resulting detention at Waukesha Memorial Hospital. As to the petition for guardianship, we affirm the trial court's findings that the costs of the guardian ad litem and Ethelyn's advocate counsel are properly assessed to her. We further hold that an assessment of liability for the costs of the court-appointed expert and the temporary guardian rests within the sound discretion of the trial court. However, because the trial court assessed these costs to Ethelyn based on its determination that the initial emergency detention was appropriate, we remand this portion of the trial court's order for reconsideration in light of our opinion.

The facts of this appeal are straightforward and undisputed. Ethelyn, a ninety-five-year-old woman who shared a home with her grandson, was found by a home health care aide with feces spread on her body,

---

[2] Because we conclude that all of the costs issues are decided by the application of relevant statutory authority, we do not reach Ethelyn's equity argument.

including her face and mouth, and on the bed sheets and furniture. Ethelyn had never previously been found in such a condition and had never had prior protective services contact or treatment. The home health care aide cleaned her up and then called a supervisor. The next day a sheriff's deputy came and removed Ethelyn from her home and placed her in custody at Waukesha Memorial Hospital. In the Petition for Emergency Protective Placement, the deputy stated that based on his personal observation Ethelyn was "at substantial risk of serious harm, irreparable injury or death as a result of . . . infirmities of aging . . . if not immediately placed."

Ethelyn was detained from September 15 until September 21, 1995, when a probable cause hearing was concluded. At the close of the hearing, a court commissioner dismissed the protective placement petition for lack of probable cause.[3] However, as a result of Ethelyn's detention at Waukesha Memorial Hospital, there was an outstanding bill of $7464.05. Medicare refused to pay the charges because it found that they were not medically necessary. The County claims that Ethelyn, as the recipient of the services, is therefore individually responsible.

---

[3] In the original dismissal order, the court commissioner made a single finding: "The public has failed to meet its burden of Probable Cause herein." In an amended order, the court commissioner found that while the County had met its burden of "proving that the proposed ward is incompetent," it had not met its burden of proving that the ward "is so totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others and . . . [a]s a result of the above, the public has failed to meet its burden of Probable Cause."

A week after the court commissioner dismissed the emergency detention petition, the County petitioned the court for the appointment of a permanent guardian for Ethelyn. A stipulation was eventually reached in which Ethelyn agreed not to contest the guardianship petition if her already-named conservator, her daughter, was named as guardian. However, Ethelyn's court-appointed guardian ad litem contested the parties' stipulation and the appointment of Ethelyn's daughter. The contested issues were ultimately resolved.

Ethelyn has continually denied liability for the costs associated with either petition. At a hearing on the matter, the trial court concluded that Ethelyn was responsible for all of the costs of both petitions. This was based on the court's finding that the initial emergency protective petition was appropriate and that the emergency protective statute allowed the shifting of all costs. The following costs were assessed to Ethelyn: medical expenses at Waukesha Memorial Hospital of $7464.05, fees for the temporary guardian, guardian ad litem fees for the time period encompassing both petitions, the cost of a psychological evaluation by the County's expert, and the fees of Ethelyn's advocate counsel as well as Ethelyn's conservator's legal fees. Ethelyn now appeals.

In order to address the issues raised by Ethelyn, we will first construe § 55.06(11), STATS., to determine whether the underlying petition for emergency detention was sound and the impact of that determination on the trial court's assessment of fees. This will require consideration of pertinent sections of chs. 51 and 55, STATS., as well as case law relating to this issue.

■

The interpretation of a statute presents a question of law and we need not give special deference to the

trial court's determination. *See K.N.K. v. Buhler,* 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987). The necessity for protective placement is a question of law because it involves the application of the facts as found by the court to a statutory guideline. *See id.* at 198, 407 N.W.2d at 285. We therefore review this issue independently of the trial court's conclusion. *See id.*

Section 55.06(11), STATS., outlines the basis for an emergency protective placement. It provides:

> **(11)** (a) If from *personal observation* of a sheriff, police officer, fire fighter, guardian, if any, or authorized representative of a board . . . or an agency . . . *it appears probable that an individual will suffer irreparable injury or death or will present a substantial risk of serious physical harm to others* as a result of developmental disabilities, infirmities of aging, chronic mental illness or other like incapacities if not immediately placed, *the person making the observation may take into custody and transport the individual* to an appropriate medical or protective placement facility. The person making placement shall prepare a statement at the time of detention providing specific factual information concerning the person's observations and the basis for emergency placement. . . .
>
>  . . . .
> (b) Upon detention, a petition shall be filed under sub. (2) by the person making such emergency placement and a preliminary hearing shall be held within 72 hours . . . to establish probable cause to believe the grounds for protective placement under sub. (2). . . . [Emphasis added.]

The plain language of the above section requires that an emergency detention is to be based on the "personal observation" of a discrete list of individuals: "a sheriff,

police officer, fire fighter, guardian . . . or authorized representative of a board . . . or an agency." While the petition in the instant case was filed by a sheriff's deputy, he did not personally observe the incident underpinning the petition. A home health care aide (not one of the statutorily enumerated individuals) observed Ethelyn smeared with feces; Ethelyn was taken into protective custody approximately twenty-four hours later by a sheriff's deputy. This scenario does not satisfy the plainly-worded requirements that only particular officials may bring such a petition and that an emergency detention must be based on the *personal observations* of the appropriate individual.[4]

The County argues that this conclusion ignores our decision in *K.N.K.* wherein we concluded that a similarly-worded requirement in § 55.06(3)(b), STATS., required only that the petitioner's allegations be based on a "reliable" source. *See K.N.K.,* 139 Wis. 2d at 213, 407 N.W.2d at 291. We concluded there that "[t]he legislature did not intend that a petitioner must be omnipresent; the petitioner need only state the sources of the information alleged in the petition if not based upon the petitioner's personal observations." *Id.* at 213–14, 407 N.W.2d at 291. The County contends that the discussion in *K.N.K.* supports its detention of Ethelyn and specifically argues that the sheriff's deputy was warranted in relying on the report of the home health care aide. However, we conclude that while both subsections contain a requirement that the respective petitions be based on personal knowledge or observa-

---

[4] According to the record, after the home health care aide called her supervisor, both the supervisor and a human services employee visited the home. Both arrived after Ethelyn had been cleaned up. The sheriff's deputy who took Ethelyn into custody came to the house the following day.

tion, our analysis in *K.N.K.* should not be extended to subsec. (11), the subject of this appeal.

Section 55.06(2), STATS., does not result in an emergency detention, i.e., the removal of an individual from familiar surroundings for treatment. Under § 55.06(1) and (2), notice of a petition for placement is to be served ten days prior to a hearing. *See* § 55.06(5). During that intervening time, the status quo is retained and the individual who is the subject of the petition is not moved. In fact, at the hearing on the matter, a related subsection requires: "[B]efore placement may be ordered under this chapter *the court or jury must find by clear and convincing evidence that the individual to be placed is in need of placement* as provided in sub. (2)." Section 55.06(7) (emphasis added). In addition, the language of para. (3)(b) does not limit who may bring such a petition; rather, a related subsection provides that one may be brought by "any interested person." *See* § 55.06(2). This type of petition also requires a hearing before any action is taken, at which "clear and convincing evidence" must be offered that the subject individual is in need of placement.

In contrast to the above, emergency placement pursuant to § 55.06(11), STATS., occurs immediately, and for the first seventy-two hours the detained individual is not permitted any recourse but must await a hearing. An individual subjected to an emergency detention is uprooted from familiar surroundings and detained based only on the report of one individual. Because of this, we conclude that the statutory requirements in subsec. (11) that only certain enumerated individuals may file such a petition and the filing must be predicated on actual personal knowledge provide an important and necessary "gatekeeper" function. This requirement also ensures that emergency detentions

117

will be employed only in those situations where immediate intervention is mandated, as determined by individuals knowledgeable about commitment issues.[5] This provides a high level of protection for the individual detainee and permits protective custody only upon the actual knowledge of the individual effecting the custody order.

This reading is also supported by another provision of subsec. (11): the requirement that "it appears probable [to the individual initiating the petition] that [the] individual will suffer irreparable injury or death or will present a substantial risk of serious physical harm to others." Section 55.06(11)(a), STATS. The standard for gauging whether an emergency exists and whether an individual can be removed from his or her home or other familiar surroundings is a high one. This further convinces us that our construction of the subsection's requirement that this only occur if the individual initiating the petition has made a personal observation is sound. It is on all of these bases that we distinguish our language in *K.N.K.* as applying only to § 55.06(2) protective placement petitions and decline to extend the same reasoning to *emergency* protective orders that result in the immediate detention of the subject of the petition.

---

[5] Section 55.06(11)(d), STATS., provides:

A law enforcement agency, fire department, county department designated under s. 55.02 . . . shall designate at least one employe authorized to take an individual into custody under this subsection who shall attend the in-service training on emergency detention and emergency protective placement . . . .

The fact that this subsection contains a requirement that such a detention be performed by specially trained individuals further supports our analysis distinguishing this subsection from a petition pursuant to § 55.06(2), STATS.

Having determined that the trial court erred when it found that the sheriff's deputy had "sufficient personal observation to invoke the emergency protective placement provisions," we next examine the issue of costs and fees. Ethelyn claims that the trial court erred when she was assessed all of the costs and fees associated with the emergency detention, and we agree.

In its analysis, the trial court accepted the court commissioner's finding that the County had failed to show probable cause to continue the detention. However, the court reasoned that "[s]ometimes people are sent to a hospital with a problem that may not be a problem, but that doesn't void the necessity of paying the ambulance and the emergency care." The trial court then assessed all costs to Ethelyn. Because there is a statutory basis for the assessment of costs in ch. 51, STATS., the issue of costs is one of statutory construction and as such is decided without deference to the trial court. *See K.N.K.,* 139 Wis. 2d at 206, 407 N.W.2d at 288–89. We turn to the relevant statutory authority in considering the proper assessment of costs. We will initially consider those costs associated with the emergency detention at the hospital.

■

Ethelyn was placed in protective custody pursuant to § 55.06(11), STATS. Section 51.42(1)(b), STATS., provides:

> *County liability.* The county board of supervisors has the primary responsibility for the well-being, treatment and care of the mentally ill . . . residing within its county and for ensuring that those individuals in need of such emergency services found within its county receive immediate emergency services. . . . *For the purpose of establishing county liability, "emergency services" include those services*

*provided under the authority of s. . . . 55.06(11)(a) for not more than 72 hours.* Nothing in this paragraph prevents recovery of liability under s. 46.10 or any other statute creating liability upon the individual receiving a service or any other designated responsible party, or prevents reimbursement by the department of health and family services for the actual cost of all care and services . . . . [Emphasis added.]

Based on the above, the County is liable for the costs associated with Ethelyn's emergency detention. However, we must also consider this subsection's reference to § 46.10(2), STATS., which provides:

*[A]ny person . . . receiving care, maintenance, services and supplies provided by any institution in this state . . .* in which the state is chargeable with all or part of the person's care, maintenance, services and supplies . . . *shall be liable for the cost of the care, maintenance, services and supplies* . . . . [Emphasis added.]

Based on its reading of this second statute, the trial court proceeded to shift the entire costs of not only the emergency detention, but also the costs associated with the guardianship petition, to Ethelyn. We conclude that this was in error.

While both statutes refer to placing liability on the individual who has received care, the supreme court has construed § 46.10, STATS., as being inapplicable if "the proceedings [are] not adequate to sustain a finding that the individual[ ] [is] in need of care and treatment." *Jankowski v. Milwaukee County,* 104 Wis. 2d 431, 436, 312 N.W.2d 45, 48 (1981). Because Ethelyn's initial detention was without a legal basis under the statutory guidelines, we conclude that the cost-shifting provision of § 46.10 is not applicable to Ethelyn and she

should not be assessed any costs stemming from the resulting inpatient hospitalization. Under the plain language of § 51.42(1)(b), STATS., the County has primary responsibility for the "treatment and care of the mentally ill" and for "ensuring that those individuals in need of . . . emergency services . . . receive immediate emergency services." *Id.* In an instance such as this, where a protective order is undertaken that falls outside of the statutory guidelines, we apply the reasoning of *Jankowski* and conclude that there is no shifting of costs. As that court recognized: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *See Jankowski,* 104 Wis. 2d at 440, 312 N.W.2d at 50 (quoting *Holy Trinity Church v. United States,* 143 U.S. 457, 459 (1892)). We therefore reverse that portion of the trial court's order that assessed the costs of the invalid detention and resulting hospitalization to Ethelyn.[6]

---

[6] The County argues that this reasoning is flawed because "the preliminary hearing looks ahead to the probable merits of full protective placement under § 55.06(2), [STATS.,] on the date it is conducted versus looking back to the merits of emergency protective placement under § 55.06(11)(a), [STATS.,] at the time of detention." The County then asserts that:

> The forum to contest whether probable cause existed for the initial emergency protective placement . . . would appropriately be a civil suit pursuant to § 51.61(7) [STATS.,] for violation of "the least restrictive condition necessary to achieve the purposes of . . . protective placement." § 51.61(1)(e).

Because we have determined that the deputy's petition did not comport with the plain language of the emergency detention subsection and for this reason was not a valid detention, we need not address the issue of whether the conditions surrounding Ethelyn's detention satisfied the probable cause standard as

The third issue before us is who bears responsibility for the costs of the separate guardianship proceedings instituted by the County after the emergency protective placement petition was dismissed. The trial court assessed all of those costs to Ethelyn based in part on its determination that she was liable for the costs associated with the emergency detention and that a "shifting [of all costs] under the statute [is] appropriate." Although we have determined that Ethelyn is not liable for the costs associated with her hospitalization, the issue regarding the court's assessment of the following costs remains: (1) fees of the guardian ad litem,[7] (2) fees of advocate counsel, (3) fees of a court-appointed expert, and (4) fees of an attorney appointed as a temporary guardian of Ethelyn's person and estate following the dismissal of the emergency protective placement.

■

We begin with the relevant statutory authority. The County brought the second petition pursuant to § 880.33, STATS., which is entitled "Incompetency; appointment of guardian." That statutory section provides:

---

appearing probable "that an individual will suffer irreparable injury or death." Section 55.06(11)(a), STATS.

[7] In the trial court's order, the court combined the time periods for which the guardian ad litem served Ethelyn and assessed the costs of the attorney's services "beginning in September 1995, and continuing throughout these proceedings, to the extent possible." Because our analysis thus far has concluded that Ethelyn is not responsible for any of the costs associated with the emergency detention, we now consider only the fees for the guardian ad litem which are attributable to the petition for appointment of a permanent guardian.

**(1)** Whenever it is proposed to appoint a guardian on the ground of incompetency, a licensed physician or licensed psychologist, or both, shall furnish a written statement concerning the mental condition of the proposed ward, based upon examination. . . .

**(2)** (a) 1  . . . . The court shall in all cases require the appointment of an attorney as guardian ad litem in accordance with s. 757.48(1) . . . .

We then turn to § 757.48, STATS., where it provides:

**(1)** (a)  . . . [I]n all matters in which a guardian ad litem is appointed by the court, the guardian ad litem shall be an attorney admitted to practice in this state. . . .

 . . . .

**(2)**  *If the statutes do not specify how the fee of the guardian ad litem is paid, the ward shall pay such fee. . . .* [Emphasis added.]

We do not find any specific fee directives within the language of § 880.33 and therefore conclude that the expense of the guardian ad litem is correctly assessed to Ethelyn.

■

Lacking a specific statutory directive as to the assessment of the costs of the medical expert, whose examination and written statement are mandated by § 880.33(1), STATS., we conclude that a determination of this issue rests within the sound discretion of the trial court. *See* § 814.036, STATS. ("If a situation arises in which the allowance of costs is not covered . . . the allowance shall be in the discretion of the court."); *see also* § 907.06(2), STATS. ("In civil cases the compensation [for expert witnesses] shall be paid by the parties in such proportion and at such time as the judge directs . . . .").

Such an exercise of discretion requires that a trial court: (1) examine the relevant facts, (2) apply a proper standard of law, and (3) use a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *See State v. Gudenschwager,* 191 Wis. 2d 431, 440, 529 N.W.2d 225, 229 (1995). The supreme court has also determined that our role as an appellate court does not include exercising the trial court's discretion; that is the province of the trial court. *See Barrera v. State,* 99 Wis. 2d 269, 282, 298 N.W.2d 820, 826 (1980).

The trial court's rationale for its decision was as follows:

> I think all costs appropriately under—shifting under the statute are appropriate. Sometimes people are sent to a hospital with a problem that may not be a problem, but that doesn't void the necessity of paying the ambulance and the emergency care. . . . The court so finds, and the court will act accordingly, and the request at this point for the following costs, totaling $8,792.55, which includes the Temporary Guardian of the Person fees, as all other fees listed by [corporation counsel] on page two of his brief, are appropriate, in this court's opinion. . . .
>
> . . . .
>
> . . . The protective placement statute allows for the procedure. *I find nothing—I find no violation of constitutional rights here, and after that, I find it's all appropriate.*

Based on our earlier determination that the deputy's actions were not founded upon his personal observation as required by the statute and that Ethelyn was therefore inappropriately detained, we remand the cause for the trial court to exercise its discretion and

determine liability for the medical expert's fees and the costs associated with the appointment of the temporary guardian. We reverse that portion of the trial court's order upholding the initial emergency detention as appropriate and the resulting assessment of costs for the emergency detention to Ethelyn. We affirm that portion of the order assessing Ethelyn the costs of the guardian ad litem for the guardianship proceeding, and we remand the cause for consideration of all remaining fees and costs in light of this opinion.[8]

Costs on appeal are denied to both parties.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.

---

[8] In her reply brief, Ethelyn asserts that "the trial court should conduct a hearing to determine if [she] has the ability to pay these costs." She then cites to two statutory sections in support of this argument. A motion for an indigency hearing is appropriately directed to the trial court; the question of Ethelyn's indigency is not before this court on appeal.