STATE of Wisconsin, Plaintiff-Respondent,

v.

Leroy FRY, Defendant-Appellant.

Supreme Court

*No. 85–0625–CR. Argued April 30, 1986.—Decided June 20, 1986.*

(Also reported in 388 N.W.2d 565.)

154

For the defendant-appellant there were briefs and oral argument by *Ellen Pearlman,* assistant state public defender.

For the plaintiff-respondent there was a brief by *David C. Resheske,* district attorney, and a brief by *David J. Becker,* assistant attorney general, and *Bronson C. La Follette,* attorney general, and oral argument by *Mr. Becker.*

STEINMETZ, J.  The primary issue presented on this appeal is whether the search of the locked glove compartment of the defendant's automobile after his arrest for trespass to land was justified as a search incident to an arrest. The defendant claims that the search did not qualify as a search incident to an arrest under either sec. 968.11, Stats., art. I, sec. 11 of the Wisconsin Constitution, or the fourth amendment to the United States Constitution. No challenge is made to the validity of the defendant's arrest. We conclude that the search was legal. We also conclude that the evidence was sufficient to support the defendant's conviction for carrying a concealed weapon.

Leroy R. Fry, the defendant, was charged in a criminal complaint dated April 28, 1983, with carrying a concealed weapon, contrary to sec. 941.23, Stats. The defendant moved to suppress statements and physical evidence on the basis of an illegal search. The motion was denied following a hearing before Judge James B. Schwalbach on November 16, 1983. The case proceeded to jury trial, and on July 9, 1984, Fry was found guilty. On August 27, 1984, Fry was sentenced to 45 days in

the Washington County Jail, Huber provisions to apply. After a hearing on March 6, 1985, Judge Schwalbach entered a written order denying defendant's motion for a new trial and modification of sentence. A notice of appeal was filed on March 27, 1985. We accepted certification of this appeal from the court of appeals on November 5, 1985, pursuant to sec. 809.61.

The relevant facts in this case are largely undisputed. On February 24, 1983, while Detective Robert Schulteis was at work at the Washington County Sheriff's Department, he received a phone call from a neighbor. The neighbor informed him that there was a black car in his yard bearing license number UD 8301, and that she had seen the same car on Highway 41 with what appeared to be a camera pointed toward his home. She further informed Detective Schulteis that when she drove past his residence, the vehicle was parked in the driveway. As she attempted to pull in back of it, the black car took off at a high rate of speed.

Upon receiving this information, Detective Schulteis ran a license check on the car. Its owner, a resident of Franklin, Wisconsin, was the defendant, Leroy Fry. Schulteis next phoned the Franklin Police Department and was informed that Fry was noted to carry a weapon in the glove box of his vehicle, "and if our officers did come across him, that they should use caution." Schulteis relayed this information to the dispatcher, advising that the vehicle should be located.

Deputy Sheriff Richard Feldschneider received this dispatch and, upon observing the car in question, radioed for assistance. He then pursued the car with his squad car lights activated. Fry promptly stopped his car. Other officers arrived and Deputy Feldschneider approached the automobile and requested Fry's driver's

license. Deputy Feldschneider returned to his squad car to run a check on the driver's license. After a few minutes, Fry walked over to the squad car and asked what was going on.

Fry told the deputy that he had been on the property of Detective Schulteis because Francis Bocek, his friend and passenger, had been involved in an automobile accident near there and they were trying to get some information. He explained that Bocek was anxious to return to his family in Milwaukee, as they had also been involved in the accident and Bocek was worried about them. In addition, he explained that Bocek himself was in pain. Fry sat in Feldschneider's squad and produced a copy of the accident report, Polaroid photographs of the accident intersection, and a list of places they had gone in the course of investigating the accident.

Deputy Francis Standish then asked Fry if he would drive in his own automobile to the station for further questioning. Fry responded that he would not go with the officers unless he was placed under arrest. Standish relayed this information to the dispatcher and was informed that if Fry would not come voluntarily, he should be arrested.

Fry was then arrested for trespass. The legality of the arrest is not contested. He was standing between his car and Feldschneider's squad at the time of the arrest. He was searched, handcuffed, placed in a squad and removed from the scene by Officer Feldschneider after the discovery by the officers of a weapon in the glove compartment of his car. The defendant claims he was not present at the arrest scene when the car was searched. That claim, however, is not consistent with the record. Officer Standish stated at the trial that

Deputy Feldschneider and Officer Ryan participated in the search of the vehicle with him and that he searched the glove compartment. Deputy Feldschneider, the arresting officer, also testified at the suppression hearing that he was present after the search began. At the trial, Deputy Feldschneider testified to the same facts and that he transported the defendant to the Washington County Sheriff's Department. He also testified that the time between the initial stop, including the arrest and search, and the time that the officers left the scene was about thirty minutes. It is apparent he did not transport Fry to the sheriff's department and then return to the search scene.

The primary issue raised by the defendant concerns the proper scope of a search incident to arrest. The defendant initially claims that the search of his automobile was not contemporaneous with his arrest because the officers had already transported him away from the arrest scene. As discussed above, the record does not support the factual premise for this argument. Alternatively, the defendant claims that the search does not qualify as a search incident to arrest because he was not in the vehicle when the search occurred. The defendant argues that he did not have immediate access to the area searched, thereby invalidating the search as one incident to an arrest under either sec. 968.11, Stats., art. I, sec. 11 of the Wisconsin Constitution, or the fourth amendment to the United States Constitution.

This case requires the court to determine the interrelationship between the Wisconsin statute on searches incident to arrest, sec. 968.11, Stats., and the Wisconsin and federal constitutional provisions prohibiting unreasonable searches and seizures. The de-

fendant claims that the search in this case violated the federal test for an automobile search incident to arrest, as stated in the Supreme Court's most recent decision on the issue in *New York v. Belton,* 453 U.S. 454 (1981). Assuming that this court rejects his argument under *Belton,* the defendant next urges the court to construe the search and seizure provision of the Wisconsin Constitution to provide greater protection for privacy interests than the United States Constitution. Such a construction allegedly would render the search in this case to be unconstitutional. Finally, assuming constitutionality under the Wisconsin Constitution, the defendant claims that sec. 968.11 codifies a more rigorous test for searches incident to arrest than the state and federal constitutions. We first address the defendant's statutory argument in order to avoid constitutional issues, if possible.

At the outset, we note that this case requires the court to construe the Supreme Court's *Belton* decision. The facts in *Belton* are particularly informative. Belton, the defendant, was one of four persons stopped in a car proceeding at an excessive rate of speed. The officer smelled marijuana in the car and had seen on the floor an envelope marked "Supergold" that he associated with marijuana. The Court stated the following:

> "He [the policeman] therefore directed the men to get out of the car, and placed them under arrest for the unlawful possession of marihuana. He patted down each of the men and 'split them up into four separate areas of the Thruway at this time so they would not be in physical touching area of each other.' He then picked up the envelope marked 'Supergold' and found that it contained marihuana. After giving the arrestees the warnings required by

160

*Miranda v. Arizona,* 384 U.S. 436, the state police-man searched each one of them. He then searched the passenger compartment of the car. On the back seat he found a black leather jacket belonging to Belton. He unzipped one of the pockets of the jacket and discovered cocaine." *Belton,* 453 U.S. at 455–56.

## CONSTRUCTION OF SEARCH STATUTE

Section 968.11, Stats., provides as follows:

"**968.11 Scope of search incident to lawful arrest.** When a lawful arrest is made, a law enforcement officer may reasonably search the person arrested and an area within such person's immediate presence for the purpose of:

" (1) Protecting the officer from attack;

" (2) Preventing the person from escaping;

" (3) Discovering and seizing the fruits of the crime; or

" (4) Discovering and seizing any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense."

Although the legislature enacted the statute in November, 1969, this court has never construed the statute. We have continued to decide the validity of searches solely in accordance with constitutional law. The defendant, however, contends that the statute codifies the law as it existed at the time of enactment, and that the degree of protection then codified was greater than that provided by subsequent constitutional developments. Thus, the defendant claims that the court should evaluate the search in this case under the more rigorous statutory test.

Section 968.11, Stats., was intended to codify "existing case law." *See* Comment by Judicial Council's Criminal Rules Committee, 1969 Wis. Laws 625. The parties disagree, however, about what "existing case law" was codified. The defendant argues that the statute codifies the decision of the United States Supreme Court, issued on June 23, 1969, in *Chimel v. California,* 395 U.S. 752 (1969). That decision defined a permissible search incident to arrest to include "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. The defendant claims that sec. 968.11 codifies *Chimel* because the Supreme Court rendered that decision prior to legislative enactment of the statute; *Chimel* was the controlling case law at the time of legislative enactment.

The state contends that sec. 968.11, Stats., as drafted by the Judicial Council's Criminal Rules Committee, was intended to codify the existing case law prior to *Chimel.* The state bases this conclusion on the fact that the statute and committee note were drafted and adopted by the committee prior to the *Chimel* decision. The Judicial Council's Criminal Rules Committee completed its work on the general revision of the Criminal Procedure Code, of which sec. 968.11 was a part, in March 1969. (*See* meeting notes of Judicial Council's Criminal Rules Committee on microfiche in drafting file for ch. 255, laws of 1969, maintained by the Legislative Reference Bureau.) The revision, with its explanatory note to sec. 968.11 stating that such section was intended to codify existing law, was introduced on March 27, 1969, as 1969 Assembly Bill 603. *See* Assembly Bulletin, Regular Session 1969 (January 6, 1969-

January 16, 1970) at 379; 1969 Assembly Bill 603 at 50–51. That was almost three months before the release of the *Chimel* decision. Thus, the state reasons that sec. 968.11 was intended to codify pre-*Chimel* law.

At the outset, we note that the *Chimel* decision did effect a change in the permissible scope of a search incident to arrest. In *Leroux v. State,* 58 Wis. 2d 671, 688, 207 N.W.2d 589 (1973), we stated that *Chimel* "substantially restricted the 'search incident' exception to [the] warrant requirement." *Chimel* accomplished this result, however, by giving a more restrictive definition to the prior test for a search incident to arrest, rather than stating a wholly new test. The pre-*Chimel* test permitted a search incident to arrest to "extend beyond the person of the one arrested to include the premises within his immediate presence or control." *Leroux,* 58 Wis. 2d at 688. Thus, *Chimel* did not establish the "immediate presence or control" test. Instead, it defined that key phrase in terms of the "area from within which he [the defendant] might gain possession of a weapon or destructible evidence." *Chimel,* 395 U.S. at 763. This "arm's reach" restriction on the "immediate presence or control" test deviated from prior case law which permitted searches of entire apartments and automobiles as an incident to arrest. LaFave, *Search & Seizure,* sec. 7.1(a) at 490 (1978), discusses the broader scope of the pre-*Chimel* test for searches incident to arrest:

> "During the days of the *Harris-Rabinowitz* rule, when courts generally permitted a full warrantless search of the defendant's premises merely because of the defendant's arrest there, a comparable unrestrained search was permitted of vehicles in the possession or general control of an arrestee. Somehow,

the fact a lawful arrest had been made in such circumstances was thought to justify a full search of the car. It made no difference that there was no way the arrestee could get at the particular place being searched; such a search was permitted to extend to a locked trunk, and to the passenger area of the vehicle after the arrestee had been removed to a nearby squad car." (Footnotes omitted.)

Recognizing that *Chimel* restricted the permissible scope of a search incident to arrest, we must determine whether sec. 968.11, Stats., codified the restrictions of that decision or the broader test recognized in *United States v. Rabinowitz,* 339 U.S. 56 (1950), and *Harris v. United States,* 331 U.S. 145 (1947). This court applied the *Harris-Rabinowitz* test prior to *Chimel. See State v. Phillips,* 262 Wis. 303, 309, 55 N.W.2d 384 (1952); *State v. Cox,* 258 Wis. 162, 171, 45 N.W.2d 100 (1950); *Browne v. State,* 24 Wis. 2d 491, 504–06, 129 N.W.2d 175 (1964); *Jackson v. State,* 29 Wis. 2d 225, 230–31, 138 N.W.2d 260 (1965).

Our construction of sec. 968.11, Stats., is influenced by the fact that the statute is unconstitutional if construed to codify pre-*Chimel* law. *Chimel,* 395 U.S. at 768, expressly overruled *Harris* and *Rabinowitz,* to the extent that they permitted a search incident to arrest beyond the area within which the defendant might grab a weapon or evidentiary item. The *Chimel* test has not been abandoned by the Supreme Court, as recognized by *Belton,* 453 U.S. at 460, n. 3. In fact, *Belton* specifically applied the *Chimel* test when determining whether the passenger compartment of an automobile was within "the area into which an arrestee might reach." *Id.* at 460. Thus, the state's claim that sec. 968.11 codifies the pre-*Chimel* test for a search incident

to arrest would be fatal to the statute. Before the court can conclude that the statute is unconstitutional, however, we must construe it in light of the canon of statutory construction providing that "statutes should be construed so as to avoid constitutional objections." *Jankowski v. Milwaukee County,* 104 Wis. 2d 431, 439, 312 N.W.2d 45 (1981).

We conclude that sec. 968.11, Stats., can be construed to be consistent with the *Chimel* test. The statute expressly limits searches to the area within the "immediate presence" of the defendant. This language is consistent with *Chimel's* "immediate control" test. Decisions prior to *Chimel* used "presence" and "control" interchangeably, and post-*Chimel* decisions describe the acceptable area of search in terms of "control," as well as the "vicinity of the arrest." *Day v. State,* 61 Wis. 2d 236, 248, 212 N.W.2d 489 (1973); *State v. Phelps,* 73 Wis. 2d 313, 317, 243 N.W.2d 213 (1976). On its face, therefore, the language of sec. 968.11 is consistent with *Chimel.*

The permissible purposes for a search incident to arrest, stated in sec. 968.11, Stats., also are consistent with *Chimel.* The statute permits searches in order to protect the officer from attack, to prevent escape, and to discover and seize the fruits of the crime and evidence of the crime. These purposes are the same as *Chimel's* justification for a search incident to arrest, *i.e.,* protection of officers, prevention of escape, and discovery of evidence which the defendant otherwise might destroy or conceal.

We hold, therefore, that the language of sec. 968.11, Stats., is consistent with the constitutional test for a search incident to arrest under *Chimel.* Because

the language is consonant with *Chimel,* we also construe the "immediate presence" requirement to limit searches to the area from which a defendant might gain possession of a weapon or destructible evidence. Our construction of sec. 968.11 results in the constitutionality of the statute.

The defendant contends, however, that this construction of the statute freezes the scope of a search incident to arrest to that permitted by *Chimel.* He notes that the statute codified "existing case law," which we now have construed to mean *Chimel* in order to avoid constitutional objections. The defendant then concludes that the legislature intended to freeze the scope of searches incident to arrest to that codified by the statute. He claims that the act of codification implicitly limited the judiciary's authority to subsequently change the scope of searches, except as required to provide constitutional protection. Finally, the defendant interprets the Supreme Court's *Belton* decision, in the context of automobile searches, to relax *Chimel's* limitation on such searches to the area from which the defendant might secure a weapon or evidence. Because *Belton* allegedly relaxes the constitutional safeguards of *Chimel,* as codified in sec. 968.11, Stats., the defendant concludes that this court is statutorily foreclosed from adopting *Belton.*

We do not consider *Belton* to represent a relaxation of the *Chimel* test. *Belton,* 453 U.S. at 460, n. 3, specifically stated that: "Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." In partic-

ular, *Belton* construed the key *Chimel* phrase, "the area within the immediate control of the arrestee," as it applied to automobile searches. *Id.* at 460. The Supreme Court concluded from its review of cases from other jurisdictions that some courts were treating the passenger compartment of automobiles as "within the immediate control of the arrestee," even when the defendant was removed from the vehicle at the time of the search; other courts refused to permit searches of automobile passenger compartments in comparable factual circumstances. *Id.* at 459. *Belton* resolved these conflicting interpretations of *Chimel* by deciding that the interior of an automobile "is an area into which an arrestee might reach in order to grab a weapon or evidentiary item," *Id.* at 460, even when the defendant is not in the automobile during the search. The Court stated:

> "While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguable includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' *Chimel,* 395 U.S., at 763. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a

lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

The *Belton* decision, therefore, merely represents an application of the *Chimel* test to a specific factual situation. *Chimel* is not inconsistent with *Belton.* Thus, *Belton* is an entirely appropriate decision for this court to rely on in construing sec. 968.11, Stats. This court has never previously decided, when considering the legality of a search, whether the interior of an automobile is within the area from which a defendant might grab a weapon or evidence. Because we have construed the statute to be consistent with *Chimel,* however, subsequent Supreme Court interpretations of that decision are relevant in determining the meaning of our statute. Contrary to the defendant's contention, therefore, we conclude that an automobile search consistent with *Belton* does not violate sec. 968.11.

The defendant makes one further statutory attack on the search in this case. He contends that the sheriff officers did not search his automobile pursuant to one of the permissible purposes in sec. 968.11, Stats. Under this argument, the state must prove in each case the subjective intent of the officers who conduct a search incident to arrest.

We disagree that sec. 968.11, Stats., requires case-by-case litigation and proof of the officer's subjective intent when conducting a search incident to arrest. The statute authorizes searches incident to arrest and then defines the underlying justifications for this exception to the warrant requirement. The justifications for such a search of the person arrested and an area

within the person's immediate presence exist regardless of the officer's subjective intent. In *State v. Mabra,* 61 Wis. 2d 613, 625, 213 N.W.2d 545 (1974), we specifically recognized that the state does not have to prove the purpose of a search incident to arrest. We based our conclusion on the Supreme Court's holding in *United States v. Robinson,* 414 U.S. 218, 235 (1973), in which the Court stated:

> "But quite apart from these distinctions, our more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. We do not think the long line of authorities of this Court dating back to *Weeks,* or what we can glean from the history of practice in this country and in England, requires such a case-by-case adjudication. A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of

a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

We recognize that *Mabra* and *Robinson* involved searches of the person. However, the justification and exigency for a search of the area within the immediate presence of a defendant is the same as for a search of the person. *Belton,* 453 U.S. at 459, applied this same reasoning to searches beyond the person of the defendant. Thus, we conclude that sec. 968.11, Stats., does not require proof of an officer's subjective intent when conducting a search incident to arrest. The validity of a search incident to arrest is determined by the legality of the arrest and whether the search was limited to an area from which the defendant might gain possession of a weapon or evidentiary items. Here, the defendant does not question the legality of his arrest. The officers also limited the search to the passenger compartment of his automobile, which *Belton* holds is within the acceptable area of a search incident to arrest. Thus, we conclude that the search in this case does not violate sec. 968.11.

## CONSTRUCTION OF WISCONSIN CONSTITUTION

The defendant next claims that the search was not valid as an incident to the arrest under art. I, sec. 11 of the Wisconsin Constitution. The defendant alleges that this provision of the Wisconsin Constitution confers greater protection from searches and seizures than the fourth amendment to the United States Constitu-

170

tion. The defendant, however, does not urge the court to construe the Wisconsin Constitution as defining a substantively different test for a search incident to arrest. Instead, he essentially claims that we should reject *Belton*'s conclusion that the interior of an automobile is within the immediate presence or control of a defendant who is not actually in the vehicle during the search.

Whether the interior of an automobile is an area from which a defendant might secure a weapon or evidentiary items is a question of constitutional fact, which we review independently of the trial court. These questions are not questions of evidentiary or historical fact, but rather are questions that require application of constitutional principles to the facts as found. *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). The reason for independent appellate review of constitutional facts is because " '[t]he scope of constitutional protections, representing the basic value commitments of our society, cannot vary from trial court to trial court, or from jury to jury.' " *Id.*, quoting from *State v. Hoyt*, 21 Wis. 2d 284, 305–06, 128 N.W.2d 645 (1964) (Wilkie, J., concurring). We must determine whether to reject *Belton*'s treatment of the constitutional fact at issue in this case with the above principle in mind.

The Wisconsin constitutional provision relating to searches and seizures is art. I, sec. 11 of the Wisconsin Constitution:

"The right of the people to be secure in their persons, houses, papers, and effects_against unreasonable searches and seizures  shall not be violated; and no <u>warrant</u> shall_issue but upon probable

171

cause, supported by <u>oath</u> or affirmation, and particularly describing the place to be searched_and the persons or things to be seized." (Emphasis added.)

That provision is virtually identical to the fourth amendment of the federal constitution:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall *not be violated, and no* <u>Warrants</u> shall issue, but upon probable cause, supported by <u>Oath</u> or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.)

But for a few inconsequential differences in punctuation, capitalization and the use of the singular or plural form of a word, the texts of art. I, sec. 11 and the fourth amendment are identical.

This court has consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment. In *State v. Paszek,* 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971), we stated:

"This court has recognized that art. I, sec. 11 of the Wisconsin Constitution is substantially like the fourth amendment of the United States Constitution, and that the standards and principles surrounding the fourth amendment are generally applicable to the construction of art. I, sec. 11." *Accord State v. Beal,* 40 Wis. 2d 607, 612, 162 N.W.2d 640 (1968); *see State v. Prober,* 98 Wis. 2d 345, 351, 297 N.W.2d 1 (1980).

Numerous recent examples exist where this court has followed the precedent of the United States Su-

preme Court in search and seizure cases. In *State v. Rodgers*, 119 Wis. 2d 102, 349 N.W.2d 453 (1984), we followed the principles for determining the sufficiency of a consent to a search that were articulated by the Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). In *State v. Boggess*, 115 Wis. 2d 443, 453–57, 340 N.W.2d 516 (1983), we adopted the totality of the circumstances test for determining probable cause enunciated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). In *State v. Callaway*, 106 Wis. 2d 503, 519–20, 317 N.W.2d 428 (1982), and *State v. Wisumierski*, 106 Wis. 2d 722, 727–28, 317 N.W.2d 484 (1982), we repudiated the doctrine of automatic standing for persons accused of possessary offenses, in accord with the Supreme Court's decision in *United States v. Salvucci*, 448 U.S. 83 (1980). Finally, in *State v. Fillyaw*, 104 Wis. 2d 700, 710–11, 312 N.W.2d 795 (1981), we abandoned the traditional rules for determining a defendant's standing to challenge an unconstitutional search, abandoning the "legitimately on the premises" test in favor of an "expectation of privacy" test, in conformity with the Supreme Court's decision in *Rakas v. Illinois*, 439 U.S. 128 (1978).

One reason this court has refused to interpret Wisconsin's search and seizure provision differently than the Supreme Court has interpreted the fourth amendment is to prevent the confusion caused by differing standards. We said in *Conrad v. State*, 63 Wis. 2d 616, 634, 218 N.W.2d 252 (1974), that search and seizure law is marked by hair-splitting distinctions and a complexity masked by simple formulations. It is obvious that police officers must often find it confusing as they enforce the law and investigate crime. Thus, we are reluctant to construe our state constitutional provision dif-

ferently than the fourth amendment, especially since the two provisions are intended to protect the same interests and we are unconvinced that the Supreme Court provides less protection than intended by the search and seizure provision of the Wisconsin Constitution.

It is always conceivable that the Supreme Court could interpret the fourth amendment in a way that undermines the protection Wisconsin citizens have from unreasonable searches and seizures under art. I, sec. 11, Wisconsin Constitution. This would necessitate that we require greater protection to be afforded under the state constitution than is recognized under the fourth amendment. We have not reached that point with the Supreme Court's adoption of the *Belton* bright-line rule for determining the scope of a search incident to an arrest, insofar as an automobile is concerned.

The *Belton* rule is a simple and reasonable rule governing the search of an automobile after an arrest is made. A police officer may assume under *Belton* that the interior of an automobile is within the reach of a defendant when the defendant is still at the scene of an arrest, but the defendant is not physically in the vehicle. We cannot say as a matter of fact in all cases that a defendant never could regain access to the interior of an automobile after initially leaving the vehicle. Thus, we would seriously undermine police security if we adopted as a matter of constitutional fact the rule that the interior of an automobile never is within the reach of a suspect who is outside the vehicle at the arrest scene; such a rule would prohibit all automobile searches as an incident to arrest, unless the defendant was allowed to remain in the automobile during the

search, which increases the risk of danger to the officer. We cannot subscribe to such a limitation on the search incident to arrest rule.

The only other alternative to the *Belton* rule would be to permit searches on a case-by-case basis when the police believe that a suspect may escape from their control and regain access to an automobile. This alternative is unworkable, however, because such momentary escapes are not predictable. The rule would effectively prevent automobile searches, or at least eliminate any uniform rule of search. Given that we determine constitutional facts on an independent basis to assure the uniform application of constitutional rights, such as an ad hoc test for determining whether a defendant had access to the interior of an automobile is undesirable. Thus, we conclude that *Belton* is a reasonable application of the search incident to arrest exception to the warrant requirement.

■

By adopting the *Belton* rule, Wisconsin police officers can follow the fourth amendment's mandates without worrying about whether some different restrictions might be imposed on them under the Wisconsin Constitution. Uniformity of interpretation, as long as consistent with the protections of art. I, sec. 11 of the Wisconsin Constitution, reduces to a minimum the confusion and uncertainty under which the police must operate. Moreover, conforming Wisconsin's search and seizure law to that developed by the Supreme Court under the fourth amendment is not only consistent with the text of Wisconsin's search and seizure provision, its constitutional history and its judicial history, but it is also in accord with sound public

policy.[1] Thus, we hold that *Belton* is consistent with art. I, sec. 11 of the Wisconsin Constitution.

## CONSTRUCTION OF FOURTH AMENDMENT

The defendant also argues that the search in this case violated the fourth amendment rule for searches incident to arrest as stated in *Belton,* because the officers searched a locked glove compartment. The defendant argues that *Belton* only authorized searches of open or closed containers in the passenger compartment of an automobile. He relies on the following language in *Belton,* 453 U.S. at 460–61:

> "It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *United States v. Robinson, supra; Draper v. United States,* 358 U.S. 307. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Thus, while the Court in *Chimel* held that the police could not search all the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's reach could be searched be-

---

[1] For the constitutional history of art. I, sec. 11, Journal and Debates of the 1847–48 Constitutional Convention, reprinted in State Historical Society of Wisconsin, *The Attainment of Statehood,* at 228, M. Quaife, 251928.

cause of the danger their contents might pose to the police. 395 U.S., at 763."

*Belton* also specifically stated that "container" includes closed or open glove compartments. *Id.* at 460, n. 4. The defendant infers from the Court's reference to closed containers an intent to make a distinction between closed and locked glove compartments.

We do not construe *Belton* as making a distinction between a locked glove compartment and an unlocked one. In terms of the purposes of a search incident to arrest, *i.e.,* to secure weapons and evidence from the defendant, there is no meaningful distinction between a locked and closed glove compartment. There is also no distinction between a closed and locked container based on varying degrees of fourth amendment protections. This distinction was refused in *United States v. Ross,* 456 U.S. 798, 822 (1982), dealing with probable cause searches of an automobile:

> "One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between 'worthy' and 'unworthy' containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case."

*Belton,* 453 U.S. at 460–61, also refused to distinguish between containers within an automobile on the basis of differing expectations of privacy. Within the area that an arrestee might reach, a search is justified regardless of alleged differences in the arrestee's expectation of privacy. The Court specifically stated:

> "It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However, in *United States v. Robinson,* the Court rejected the argument that such a container—there a 'crumpled up cigarette package'—located during a search of Robinson incident to his arrest could not be searched: 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.' 414 U.S., at 235." *Id.* at 461.

We conclude that all closed containers, locked or unlocked, in an automobile which may be searched incident to an arrest can be searched. Construing the *Belton* decision to distinguish between locked glove compartments and other closed containers, as the defendant argues, is inconsistent with the *Ross* approach to determining the extent of protection afforded closed containers by the fourth amendment.

Other jurisdictions also have rejected the distinction between locked or unlocked glove compartments. The North Carolina court of appeals reached such a conclusion in *State v. Massenburg,* 66 N.C. App. 127, 130, 310 S.E.2d 619, 622 (1984):

> "While we admit there is some difference between a locked glove compartment and a closed but unlocked one, we do not believe the Supreme Court intended to make a distinction between them with respect to a search incident to arrest. In the recent case of *United States v. Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), the Supreme Court held that where police officers have probable cause to search a vehicle, they may conduct a warrantless search of every part of the vehicle, including all containers and packages within it, that may conceal the object of the search, that is, as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. The scope of the search is not defined by the nature of the container in which the contraband is secreted but is defined by the object of the search and the places in which there is probable cause to believe it may be found. *United States v. Ross, supra* at 824, 102 S. Ct. at 2172, 72 L. Ed. 2d at 593. Furthermore, the Court stated: 'A lawful search of fixed premises generally extends to the entire area in which the object may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.' *Id.* at 820–21, 102 S. Ct. at 2170, 72 L. Ed 2d at 591.
>
> "We conclude from our reading of these two cases that the Supreme Court has evidenced an intent to allow a warrantless search of a locked glove compartment pursuant to a lawful arrest. For this

reason, we reject defendant's second argument and hold that the heroin seized from the glove compartment was properly admitted into evidence."

We agree with this conclusion and hold that the search here was proper even though it involved a locked glove compartment.

█ The defendant next argues that the search was improper under *Belton* because it was not contemporaneous with his arrest. However, the record discloses that the search commenced immediately upon the defendant's arrest, while he was still at the arrest scene. *Belton,* 453 U.S. at 460, treated a search in similar factual circumstances to be a contemporaneous incident of that arrest. We agree with this conclusion because a search is contemporaneous with an arrest as long as the search begins immediately after the arrest and the defendant remains at the scene. *Id.* at 462. The purposes underlying the search incident to arrest exception to the warrant requirement persist while the defendant remains at the scene. Given a valid arrest, which is not challenged in this case, nothing more need be shown to justify a search of an automobile incident to arrest. Thus, we hold that the search was permissible under sec. 968.11, Stats., as well as the Wisconsin and United States Constitutions.

We note at this point that the state also proposes an alternative ground for the court to decide whether the search in this case was legal. The state claims that there was probable cause to search in the automobile for evidence of the trespass. The police may search an automobile without a warrant when probable cause exists to believe it contains evidence of a crime. *Coolidge v. New Hampshire,* 403 U.S. 443, 449 (1971). The trial

court did not address this issue, however, and the court of appeals only certified the issue regarding searches incident to arrest.

The United States Supreme Court has held that the scope of a permissible warrantless search varies depending on whether it is a search incident to arrest or a probable cause search. In *Belton,* which involves a search incident to an arrest, the Court held that there must be a contemporaneous or immediate search of the automobile, not including the trunk. The search is based on a need to protect evidence or the police and includes the area in the defendant's reach or presence. The exigency is the defendant's potential for regaining access to the area of the car. In *Ross,* the Court held that a search of an automobile based on probable cause to believe that evidence of a crime is in the automobile does not have to be contemporaneous to a particular event and the search may include the trunk area. The purpose of the search may be to discover evidence and the exigency for it is the mobility of the vehicle.

■

We would have to determine whether there was probable cause to believe that the defendant's automobile contained evidence of the suspected crime in order to conclude that the search was proper as a probable cause search. Because we conclude that the search was proper as an incident to arrest, it is unnecessary for us to decide an alternative basis for the search and we decline to do so. The search for evidence of the trespass was permissible following the arrest with no additional finding of probable cause as to its presence in the automobile being necessary.

## SUFFICIENCY OF EVIDENCE

Finally, the defendant contends that the evidence was insufficient to show that he went armed with a concealed weapon, within the meaning of sec. 941.23, Stats. He relies on his testimony that the glove compartment in which the weapon was found would not open while the passenger's seat was occupied. This testimony allegedly precludes a finding that the weapon was "within his reach," as required by *Mularkey v. State,* 201 Wis. 429, 432, 230 N.W. 76 (1930).

The elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person or within his reach; (2) the defendant was aware of the presence of the weapon; and (3) the weapon was concealed, or hidden from ordinary view. *State v. Asfoor,* 75 Wis. 2d 411, 433–34, 249 N.W.2d 529 (1977). The only element at issue in this case is whether the gun in the defendant's glove compartment was within his reach.

We conclude the evidence was sufficient to convince the trier of facts, acting reasonably, to the required degree of certitude. There was no independent evidence from the defendant's testimony that it was physically impossible to gain access to the glove compartment when a passenger occupied the front seat. In fact, the passenger, Bocek, did not even testify to such a claim. The jury was not required to accept the defendant's testimony. Even if his testimony showed that the weapon was not within his reach, the jury as trier of fact "was free to discount [it]." *State v. Grady,* 93 Wis. 2d 1, 7, 286 N.W.2d 607 (Ct. App. 1979). The defendant's

credibility and trustworthiness were matters for the jury to determine. *State v. Stanfield,* 105 Wis. 2d 553, 563, 314 N.W.2d 339 (1982). The jury could have properly rejected the defendant's testimony simply on the basis of his self-interest in the outcome of the trial. In *Zelenka v. State,* 83 Wis. 2d 601, 620, 266 N.W.2d 279 (1978), we stated:

> "The state correctly responds that Zelenka falls short of proving this defense. First, it correctly notes that the jury is not required to believe everything a witness says, particularly when that witness is the sole possessor of the facts at hand and has an interest in the outcome." (Footnote omitted.)

*Accord Bergeron v. State,* 85 Wis. 2d 595, 609, 271 N.W.2d 386 (1978). The jury reasonably could have found it unreasonable to believe that the glove compartment in the defendant's automobile could not be opened when the passenger seat was occupied; the jury could conclude that this did not comport with common sense and their general experiences in every day affairs of life, on which they could rely. Thus, we cannot determine as a matter of law under these facts that the evidence was insufficient to convict. *Cf. State v. Abramoff,* 114 Wis. 2d 206, 212, 338 N.W.2d 502 (Ct. App. 1983).

In his argument attacking the sufficiency of the evidence to show that he went armed, the defendant also attacks this court's decision in *Mularkey,* 201 Wis. at 432. That decision required the concealed weapon to be within the defendant's reach. The defendant asserts that the statement in *Mularkey,* that a driver of an automobile goes armed when he has a dangerous weapon within reach on a shelf in back of his seat, is dictum and poorly reasoned.

The statement is not dictum under Wisconsin law. While it may not have been decisive of the primary issue in *Mularkey,* it was germane to the controversy and therefore not dictum. *State v. Kruse,* 101 Wis. 2d 387, 397, 305 N.W.2d 85 (1981). We have repeatedly affirmed this statement as a correct statement of the law, *Asfoor,* 75 Wis. 2d at 433–34, and it is now part of the standard jury instruction Wis. J.I.—Criminal 1335 (1966). We find no weakness in the *Mularkey* statement and no reason to change or disavow it.

In summary, we conclude that the officers properly searched the defendant's automobile as an incident to a legal arrest. We base this conclusion on our acceptance of the *Belton* holding that the interior of an automobile is an area from which a defendant might grab a weapon or evidentiary item. We also conclude that the evidence was sufficient to support the defendant's conviction for carrying a concealed weapon.

*By the Court.*—The judgment of the circuit court for Washington county is affirmed.

WILLIAM A. BABLITCH, J. *(dissenting).* The majority opinion allows police officers, after effectuating a custodial arrest for a violation of a traffic regulation or crime, to conduct warrantless searches of luggage, briefcases, and other containers found in the interior of an automobile, absent any showing of probable cause to believe that those containers hold contraband or evidence of a crime. The majority, while continuing to pay lip service to the exception to the warrant requirement set forth by the United States Supreme Court in *Chimel v. California,* 395 U.S. 752 (1969), stretches the underpinnings of *Chimel* so far

that the court seems to be quickly reaching the point where the rule of the fourth amendment will be warrantless searches and the exception will be validly executed warrants. Accordingly, I dissent.

The majority, in "affirming" the fundamental principles of *Chimel* states:

> "We do not consider *Belton* to represent a relaxation of the *Chimel* test. *Belton,* 453 U.S. at 460, n. 3, specifically stated that: 'Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.'" P. 166.

The *Chimel* exception to the warrant requirement permits police officers who have made a custodial arrest to conduct a warrantless search of the arrestee's person and the area within his immediate control. This exception was based on two overriding concerns: the safety of the arresting officer(s), and the preservation of easily concealed or destructible evidence:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evi-

dentiary items must, of course, be governed by a like rule." *Chimel* at 762–63.

Was the safety of the arresting officers in jeopardy here? Was there *any* danger that the gun that they were looking for in the locked glove compartment could be seized by the arrestees, concealed, or destroyed? The answers to these questions, as evidenced by the undisputed facts here, is a resounding "no."

At the time of the police entry into Fry's locked glove compartment, the arrestee and his passenger were both handcuffed. They were both in separate squad cars parked some distance from the searched vehicle. While other police officers were engaged in the search of the automobile, Fry and his passenger were both guarded by separate police officers.

The majority's conclusions rest upon the United States Supreme Court's discussion in *New York v. Belton,* 453 U.S. 454 (1981). Even assuming that the facts of this case fit within the *Belton* rule,[1] *Belton* provides

---

[1] In *Belton,* the suspects were not handcuffed at the time of the search. Here both arrestees were handcuffed. In *Belton,* the suspects, not handcuffed, were standing just outside the searched car at the time of the search. Here the two arrestees were inside two separate squad cars being guarded by two separate police officers at the time of the search. In *Belton,* the area searched was the back seat of the car from which an officer seized and searched a jacket. Here, the area searched was a locked glove compartment.

In *Belton* there was, at least arguably, an opportunity for one of the suspects to get back into the passenger compartment, the area searched. Here, it was inconceivable that one of the arrestees could have returned to the car, seized the keys from the ignition, unlocked the glove compartment and seized the gun, thereby eluding not only his guard, but the police officers who were in the suspect vehicle as well.

186

a very shaky basis for the court to rely on. I do not find one commentary favorable to the *Belton* rule, and there are many which are not.[2] The United States Supreme Court continues to be divided on the question, and LaFave predicts that "the rule may well be abandoned." W. LaFave at sec. 7.1 (Supp.).

The rule which permits warrantless noninventory searches of automobiles only when necessary to protect the safety of the arresting officers or to prevent the destruction or concealment of evidence has served Wisconsin citizens well since 1969. There is no sound reason to abandon it now. The adoption of this new rule may well lead to pretextual custodial arrests in traffic or minor criminal situations in which the officer would not normally make a custodial arrest, in order to search an interesting looking locked briefcase, piece of luggage or other container. The rule adopted by the majority allows such a search, absent probable cause to believe that contraband or evidence of crime will be found within such containers.

I would do as other states have done when confronted with this question, and continue to pay more than lip service to the sound principles of *Chimel. See, State v. Ringer,* 674 P.2d 1240, 1247 (Wash. 1983), *Peo-*

---

[2] Y. Kamisar, *The "Automobile Search" Cases: The Court Does Little to Clarify the "Labyrinth" of Judicial Uncertainty* in The Supreme Court: Trends and Developments, 69 (1982); W. LaFave, *Search and Seizure,* sec. 7.1 (Supp. 1986); D. Rudstein, *The Search of an Automobile Incident to an Arrest: An Analysis of New York v. Belton,* 67 Marq. L. Rev. 205 (1984); W. LaFave, *The Fourth Amendment in an Imperfect World: On Drawing "Bright Lines" and "Good Faith,"* 43 U. Pitt. L. Rev. 307, (1982); Note, *Belton, Robbins and Ross: Search and Seizure In Automobiles Revisited,* 29 Wayne L. Rev. 241 (1982); V. Wilson, *The Warrantless Automobile Search: Exception Without Justification,* 32 Hastings L.J. 127 (1980).

*ple v. Smith,* 452 N.E.2d 1224 (N.Y. 1983) and *State v. Hernandez,* 410 So. 2d 1381 (La. 1982). I would hold that sec. 968.11, Stats., and art. 1, sec. 11 of the Wisconsin Constitution require that warrantless noninventory searches of luggage, briefcases or other containers in the interior of an automobile are permissible only if the containers searched are within an area from which an arrestee might gain possession of a weapon, or destroy or conceal evidence. Inasmuch as there was no danger of either presented by the facts of this case, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE SHIRLEY S. ABRAHAMSON join in this dissent.